NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| ROBERT E. TAYLOR, AS PARENT AND GUARDIAN AD LITEM OF H.T., | Civil Action No.: 18-cv-1842 |
|---|---|
| Plaintiff, | OPINION |
| v. | |
| METUCHEN PUBLIC SCHOOL DISTRICT, | |
| Defendant. | |

**CECCHI, District Judge.**

## I. INTRODUCTION

This matter comes before the Court on Defendant Metuchen Public School District's motion to dismiss the complaint of Plaintiff Robert E. Taylor, a licensed attorney appearing as parent and guardian *ad litem* of his minor child, H.T. In his Amended Complaint, (ECF No. 10 ("Am. Compl.")), Plaintiff alleges various state and federal civil rights claims stemming from the outcome of a harassment, intimidation, and bullying ("HIB") investigation of H.T while he was a third-grade student at Campbell Elementary School, a public school administered by Defendant. Defendant moves to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. (ECF No. 12). Plaintiff opposes. (ECF No. 15).

Pursuant to Federal Rule of Civil Procedure 78(b), the Court decides this motion without oral argument. Having considered the parties' submissions, the Court will grant Defendant's motion and dismiss the Amended Complaint.

1

## II. BACKGROUND

### A. The Anti-Bullying Bill of Rights Act

In 2011, New Jersey created the Anti-Bullying Bill of Rights Act (the "ABR"), N.J.S.A.18A:37-13 et seq., to "strengthen the standards and procedures for preventing, reporting, investigating, and responding to incidents" of HIB in New Jersey public schools. N.J.S.A. 18A:37-13.1(f). The ABR defines HIB:

> "Harassment, intimidation or bullying" means any gesture, any written, verbal or physical act, or any electronic communication, whether it be a single incident or a series of incidents, that is reasonably perceived as being motivated either by any actual or perceived characteristic, such as race, color, religion, ancestry, national origin, gender, sexual orientation, gender identity and expression, or a mental, physical or sensory disability, or by any other distinguishing characteristic, that takes place on school property, at any school-sponsored function, on a school bus, or off school grounds as provided for in section 16 of P.L.2010, c. 122 (C.18A:37-15.3), that substantially disrupts or interferes with the orderly operation of the school or the rights of other students and that:
>
> a. a reasonable person should know, under the circumstances, will have the effect of physically or emotionally harming a student or damaging the student's property, or placing a student in reasonable fear of physical or emotional harm to his person or damage to his property;
>
> b. has the effect of insulting or demeaning any student or group of students; or
>
> c. creates a hostile educational environment for the student by interfering with a student's education or by severely or pervasively causing physical or emotional harm to the student.

*Id.* at 18A:37-14. The ABR further requires each New Jersey school district to adopt a policy prohibiting HIB, which must include, among other things, a definition of HIB which is "no less restrictive" than the definition set forth above, consequences and remedial action for those found to have committed acts of HIB, and an appropriate procedure for reporting such acts. *Id.* at 18A:37-15.

2

### B. The November 23, 2015 Incident

Plaintiff alleges the following facts in his Amended Complaint. H.T., D.F., and S.C. are minor students who, during the 2015-2016 academic year, attended third grade at Campbell Elementary School. (Am. Compl. ¶¶ 18-20). On November 23, 2015, S.C. accidentally exposed his chest and midsection while attempting to remove a sweatshirt. (*Id.* ¶ 26). This occurrence prompted several students, including H.T. and D.F., to laugh at S.C. (*Id.* ¶ 27). Later, D.F. created a drawing caricaturizing S.C. and the occurrence. (*Id.* ¶ 28). D.F. showed the drawing to H.T., who encouraged D.F. to post the drawing on Facebook, a popular social media website. (*Id.* ¶ 30). Later that day, S.C. reported the incident to his classroom teacher, Kara Wong. (*Id.* ¶ 35). On or about November 24, 2015, Ms. Wong submitted a written report concerning the November 23, 2015 incident to Campbell Elementary School's anti-bullying specialist, Vice Principal Brooke Kirschner ("Kirschner"). (*Id.* ¶ 36).

### C. The HIB Investigation

Subsequent to Ms. Wong's report, Kirschner conducted an HIB investigation of the November 23, 2015 incident. (*Id.* ¶ 37). As part of her investigation, Kirschner interviewed nine students, including S.C., D.F., and H.T. (*Id.* ¶ 38). The investigation revealed that, since the beginning of the 2015-2016 academic year, S.C. had been the target of various bullying activities, apparently based on his relatively small stature. (*Id* ¶¶ 39-43). Although H.T. initially denied laughing at S.C. or encouraging D.F. to post the caricature on Facebook, he later admitted to engaging in such activities. (*Id.* ¶¶ 44, 48). However, H.T. denied, both initially and thereafter, participating in bullying S.C. prior to the November 23, 2015 incident. (*Id.* ¶¶ 45, 49). Other students interviewed by Kirschner reported that H.T. and D.F. were "often mean." (*Id.* ¶ 46). On December 7, 2015, Kirschner prepared a written report documenting the findings of the HIB

investigation. (*Id.* ¶ 54). In her report, Kirschner concluded that H.T. and D.F. had engaged in HIB. (*Id.*). Thereafter, Kirschner reported the results of her investigation to Plaintiff and to Vincent Caputo, Superintendent of the Metuchen School District. (*Id.* ¶¶ 17, 58).

### D. Subsequent Procedural History

On December 15, 2015, Mr. Caputo reported the results of the HIB investigation to the Metuchen Board of Education (the "Board"). (*Id.* ¶ 59). On December 17, 2015, Plaintiff received a letter informing him of the results of the investigation. (*Id.* ¶ 60). On December 29, 2015, Plaintiff requested an opportunity to appeal the HIB decision. (*Id.* ¶ 61). On January 5, 2016, the Board affirmed the investigation's finding of HIB. (*Id.* ¶ 62). On January 26, 2016, Plaintiff appeared before the Board to appeal the HIB determination. (*Id.* ¶ 63). Plaintiff argued before the Board that the HIB determination was unlawful because Kirschner failed to make particular factual findings required to find that an incident of HIB had occurred, and that Kirschner's conclusions were not supported by evidence. (*Id.* ¶¶ 64-66). Thereafter, the Board upheld the HIB determination. (*Id.* ¶ 67).

On April 7, 2016, Plaintiff filed an appeal of the Board's ruling with the New Jersey Commissioner of Education. (*Id.* ¶ 68). The matter was subsequently referred to the Office of Administrative Law. (*Id.*). Before the Office of Administrative Law could consider the appeal, Plaintiff withdrew his pending appeal and filed this lawsuit in the New Jersey Superior Court. (*Id.* ¶ 69). Defendant removed the case to federal court pursuant to 28 U.S.C. § 1441. (ECF No. 1).

## III. <u>LEGAL STANDARD</u>

For a complaint to survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. See *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A pleading that offers 'labels and conclusions . . . will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, when reviewing complaints for failure to state a claim, district courts should engage in a two-part analysis: "First, the factual and legal elements of a claim should be separated . . . . Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

IV. **DISCUSSION**

Plaintiff chiefly complains that Defendant disciplined H.T. without first reaching an explicit finding that H.T.'s conduct substantially disrupted or interfered with either school operations or another student's rights. Plaintiff theorizes that because Vice Principal Kirschner's report does not expressly recite such a finding, Defendant's disciplining of H.T. violated his civil and constitutional rights. Defendant moves to dismiss Plaintiff's Amended Complaint in its entirety. (ECF No. 12). Plaintiff's Amended Complaint is divided into four counts. The Court will analyze each of Plaintiff's claims in turn.

5

A.  § 1983—Procedural Due Process

Plaintiff's Count II alleges that Defedant, through the HIB investigation, deprived H.T. of his right to procedural due process in violation of 42 U.S.C. § 1983 ("§ 1983").

> To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of "life, liberty, or property," and (2) the procedures available to him did not provide "due process of law."

*Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)). However, Plaintiff's Amended Complaint does not expressly state what property or liberty interest of H.T.'s Defendant allegedly interfered with. Plaintiff does not, for example, allege that as a consequence of Defendant's allegedly improper HIB finding H.T. was suspended from school. Plaintiff merely alleges, in the abstract, that he suffered "damages including, but not limited to, the deprivation of his due process rights under the Fourteenth Amendment" and that he has suffered "irreparable damage." (Am. Compl. ¶¶ 89, 91). The Court notes, however, that elsewhere in his Amended Complaint Plaintiff does allege that as a result of the HIB investigation H.T. was "permanently stigmatized as a 'bully.'" (*Id.* ¶ 107). The Court further notes that H.T. was required to "serve recess detention" and to issue an apology to S.C. (ECF No. 12-5 at 26)[1]. Therefore the Court will construe Plaintiff's Amended Complaint as

---

[1] Here, the Court refers to Defendant's Exhibit B, Kirschner's report memorializing the HIB investigation, which Defendant attached to its brief in support of the present motion. (ECF No. 12-5 at 24-26). On the occasion of a pre-answer motion to dismiss pursuant to rule 12(b)(6), district courts generally may not consider matters beyond the pleadings. "However, an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (alteration in original) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)). "[W]hat is critical is whether the claims in the complaint are 'based' on an extrinsic document . . . ." *Id.* (citing *In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig.*, 7 F.3d 357, 368 n.9 (3d Cir. 1993)). Here, Plaintiff's central allegation is that Kirschner failed to make particular factual findings prior to

alleging that Defendant, through the HIB investigation, interfered with H.T.'s property interest in education and his liberty interest in his reputation.

In *Goss v. Lopez*, the Supreme Court made clear that public school students are entitled to certain procedural due process protections in the school discipline context to protect their property interests in receiving a public education and liberty interests in their reputations. 419 U.S. 565, 574-75 (1975). Specifically, the Court held that such interests were implicated where a student suffered "total exclusion from the educational process" in the form of a ten day out-of-school suspension. *Id.* at 576. In such a case, a student must be afforded "notice and . . . some kind of hearing." *Id.* at 579. Subsequent case law, however, has clarified that where a student receives a lesser punishment than out-of-school suspension, and in particular where a student is not deprived of all opportunity to receive education and instruction during his punishment, the protections of procedural due process may not apply. *See e.g. Laney v. Farley*, 501 F.3d 577, 584 (6th Cir. 2007) (holding that a one day in-school suspension, during which the student was required to complete school work and was counted as being in attendance at school, was a *de minimus* deprivation that did not implicate due process requirements); *Hassan v. Lubbock Indep. Sch. Dist.*, 55 F.3d 1075, 1081 (5th Cir. 1995) ("*De minimis* or trivial deprivations of liberty in the course of the disciplining of a student do not implicate procedural due process requirements."); *Fenton v. Stear*, 423 F. Supp. 767, 773 (W.D. Pa. 1976) (procedural due process protections did not apply where school district, as punishment for calling a teacher a vulgar name, required a public high school student to report

---

reaching her conclusion that H.T. committed an act of HIB, and Plaintiff explicitly and repeatedly refers to Kirschner's report as the principal demonstration of that fact. *See* (Am. Compl. ¶¶ 54-56, 64, 66, and 87). Thus, since Plaintiff explicitly relies on Kirschner's investigation report in his complaint, the Court will consider that document notwithstanding that it is extraneous to the pleadings.

7

to a particular room to do his assigned work and forbade him from participating in a senior class field trip).

In *Couture v. Board of Education of Albuquerque Public Schools*, 535 F.3d 1243 (10th Cir. 2008), the United States Court of Appeals for the Tenth Circuit had occasion to consider whether the property and liberty interests established by *Lopez* applied where a student was removed from class and placed in a "timeout room" on twenty-one occasions for around twelve hours cumulatively over the course of approximately two and one-half months. The Tenth Circuit distinguished that case from *Lopez* and held that no procedural due process right was implicated because the length of time during which the student was held out of the classroom was "incomparable to missing ten straight days of instruction." *Id.* at 1257. Among other factors, the court considered the extent to which the plaintiff was deprived of educational opportunities while confined to the "timeout room." *Id.* The court then held that procedural protections were not required for such a minimal educational punishment. *Id.* at 1258.

Here, Plaintiff makes no allegations of the extent to which his son H.T. was deprived of educational opportunities as a consequence of the HIB investigation, and inspection of the documents upon which Plaintiff relies for his complaint reveals only that H.T. was required to "serve recess detention," (ECF No. 12-5 at 26), a sanction that the Court, in accordance with the case law, considers a *de minimis* punishment. The Court finds that even assuming they are true, Plaintiff's allegations are insufficient to establish that Defendant interfered with either H.T.'s property interest in education or his reputational liberty interest. Thus, Plaintiff has failed to allege a § 1983 claim for deprivation of H.T.'s procedural due process rights. Accordingly, the Court will dismiss Plaintiff's Count II insofar as it alleges such a claim.

## B. § 1983—Substantive Due Process

Plaintiff further alleges, under Count I, deprivation of H.T.'s substantive due process rights in violation of § 1983. To succeed on claims under § 1983 alleging non-legislative violations of substantive due process[2] "a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies." *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 139-40 (3d Cir. 2000). "[N]ot all property interests worthy of procedural due process protection are protected by the concept of substantive due process." *Id.* at 140 (quoting *Reich v. Beharry*, 883 F.2d 239, 243 (3d Cir. 1989)). Rather, "a plaintiff must have been deprived of a *particular quality* of property interest." *Id.* (quoting *DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d 592, 598 (3d Cir. 1995)). "Whether a property interest is protected for purposes of *substantive due process* is a question that is not answered by reference to state law. Rather, for a property interest to be protected for purposes of *substantive due process*, it must be 'fundamental' under the United States Constitution." *Hill*, 455 F.3d at 235 n.12.

As with Plaintiff's procedural due process claim, the pleadings do not make clear what property interest of H.T.'s his substantive due process claim is based upon. Rather, Plaintiff relies on unspecified and conclusory allegations that he was deprived of his Fourteenth Amendment rights. (Am. Compl. ¶¶ 82, 84). However, given the school discipline context of this case, the Court will, as it did above with Plaintiff's procedural due process claim, construe Plaintiff's substantive due process claim as referring to H.T.'s property interest in a public education. Third Circuit and Supreme Court precedent make clear that "there is no fundamental right to public

---

[2]In such a claim, the plaintiff challenges the constitutional validity of a non-legislative state action such as the matter of school discipline at issue here. *See Nicholas v. Pa. State Univ.*, 227 F.3d 133, 139-40 (3d Cir. 2000) (discussing the different legal standards for legislative and non-legislative action).

9

education." *Bowers v. NCAA*, 475 F.3d 524, 553 (3d Cir. 2007), *amended on reh'g* (Mar. 8, 2007) (citing *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35 (1973)). Therefore, to the extent that Plaintiff's substantive due process claim relies on the theory that H.T. was deprived of a fundamental right to a public education, it fails as a matter of law. Since the Amended Complaint offers no alternative theory that the Court can discern, the Court will dismiss Plaintiff's § 1983 claim for deprivation of H.T.'s substantive due process rights.

### C. § 1983—Freedom of Speech

Under Count III of the Amended Complaint, Plaintiff also alleges a claim against Defendant for violation of rights protected by § 1983 and the First Amendment. Specifically, Plaintiff alleges that Defendant's application of the ABR to H.T.'s conduct was unconstitutional because, Plaintiff argues, such conduct was a protected speech act. (Am. Compl. ¶¶ 92-103). Plaintiff maintains that H.T.'s speech—which consisted of encouraging his friend, D.F., to publish a caricature of another student, S.C., on a social media website—was protected because it did not substantially disrupt or interfere with the operation of Campbell Elementary School or with any other student's rights, as required by both the ABR and the First Amendment. (*Id.* ¶¶ 95-100). Because the Court does not agree that H.T.'s actions, as alleged in the Amended Complaint, constituted speech protected by the First Amendment, it will dismiss Plaintiff's § 1983 claim for deprivation of H.T.'s First Amendment speech rights.

The Supreme Court has made clear that public school students enjoy the protection of the First Amendment when they engage in speech activities at school. "[S]tudents do not 'shed their constitutional rights to freedom of speech or expression at the schoolhouse gate.'" *Morse v. Frederick*, 551 U.S. 393, 396 (2007) (quoting *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969)). However, the speech rights of students "must be 'applied in light of the

special characteristics of the school environment.'" *Id.* (quoting *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 266 (1988)). The Court's basic framework for assessing student free speech claims was set forth in *Tinker v. Des Moines Independent Community School District*. Under the rule set forth in that case, restrictions on student speech are permitted so long as such restrictions can be "justified by a showing that the students' activities would materially and substantially disrupt the work and discipline of the school." *Tinker*, 393 U.S. at 513.

Within the above framework, "in order to prove a First Amendment violation claim a plaintiff must show: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Dunkley v. Bd. of Educ. of the Greater Egg Harbor Reg'l High Sch. Dist.*, 216 F. Supp. 3d 485, 490 (D.N.J. 2016) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)).

Recently, this Court considered a claim similar to Plaintiff's in *Dunkley v. Board of Education of the Greater Egg Harbor Regional High School District*. 216 F. Supp. 3d at 485. In that case, the plaintiff, a high school student, alleged that his rights were violated when he was disciplined for out-of-school postings on social media. *Id.* at 488. Specifically, the plaintiff maintained that his punishment was unconstitutional because his postings were innocuous and not disruptive to the school. *Id.* The Court, granting summary judgment for the defendant, found that the plaintiff's conduct resulted in substantial and material disruption to the school sufficient to bring such conduct within the sphere of constitutional regulation. *Id.* at 491. The Court observed:

> The administrators were required by state law to investigate the complaints about plaintiff's Twitter account, which took them away from other school duties. This disruption was compounded by plaintiff initially lying about his involvement, causing the school administrators to continue their investigation. Complaints from parents and students about the HIB-speech content of the Twitter account, and an investigation into those complaints, which was stymied by plaintiff's intentional

11

> decision to lie about his involvement, constitute the "material and substantial disruption" to the "work and discipline of the school" requirement necessary to permit the school to discipline plaintiff for his out-of-school speech.

*Id.*

Here, Plaintiff alleges that, as in *Dunkley*, school administrators undertook an investigation of H.T.'s conduct under the ABR. (Am. Compl. ¶¶ 37-58). Further, Plaintiff concedes that H.T. initially misled the school's anti-bullying specialist, Kirschner, in the course of her investigation by denying that he had encouraged D.F. to publish the caricature of S.C. on social media when in fact he had. (*Id.* ¶¶ 44, 48). Thus, the Court, in keeping with *Dunkley*, finds that H.T.'s conduct in encouraging D.F. to publish the caricature, as it is described in the Amended Complaint, resulted in substantial and material disruption to the work and discipline of the school and thus was not constitutionally protected conduct. Rather, H.T. was punished for engaging in conduct that Defendant was "permitted to—and indeed required to—restrict." *Dunkley*, 216 F. Supp. 3d at 490. Thus, Plaintiff has failed to allege a claim for violation of H.T.'s First Amendment speech rights. Accordingly, the Court will dismiss Plaintiff's Count III insofar as it alleges claims under § 1983.

### D. Civil Rights Conspiracy

Plaintiff further alleges a claim for Civil Rights Conspiracy pursuant to 42 U.S.C. § 1985 ("§ 1985"). Defendant maintains that Plaintiff has failed to state a claim for Civil Rights Conspiracy because Plaintiff has not pleaded sufficient factual matter to plausibly suggest that Defendant entered into a conspiracy, that Plaintiff sustained an injury or the deprivation of a protected right, or that Defendant's actions were motivated by any class-based animus. (ECF No. 13 at 35). Section 1985(3) provides a cause of action for "one injured by a conspiracy formed 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of the equal privileges and immunities under the laws.'" *Farber v. City*

*of Patterson*, 440 F.3d 131, 134 (3d Cir. 2006) (quoting 42 U.S.C. § 1985(3)). In order to state a claim under § 1985(3), a plaintiff must allege the following elements:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Id.* (quoting *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828-29 (1983)). Additionally, Plaintiff is required to allege facts that plausibly suggest "some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id.* (emphasis omitted) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).

Here, Plaintiff has failed to plead facts which plausibly support a claim for Civil Rights Conspiracy against Defendant. To begin with, Plaintiff's complaint fails to allege facts supporting the existence of a conspiracy. Predicate to the existence of a conspiracy is a "meeting of the minds" between the alleged conspirators. *See Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008). Here, Plaintiff alleges that several of Defendant's employees participated, at different stages, in an HIB investigation that eventually resulted in H.T.'s sanctioning. As to an agreement between such parties, Plaintiff merely states, in vague and conclusory fashion, that the Board, Superintendent Caputo, and unnamed others among Defendant's officers, employees, and agents conspired to violate H.T.'s constitutional rights. (Am. Compl. ¶ 106). Such statements, being legal conclusions, enjoy no presumption of truth upon a motion to dismiss. *See Fowler*, 578 F.3d at 210-11. Certainly Plaintiff makes no allegation from which the Court can infer that a "meeting of the minds" took place between the Board, Superintendent Caputo, Vice Principal Kirschner, or any other person. Because the Amended Complaint does not contain further allegations that

Defendant or its agents entered into an agreement to do the other acts alleged by Plaintiff, Plaintiff's § 1985 claim must be dismissed.

Further, Plaintiff's § 1985 claim must be dismissed because Plaintiff has failed to allege that Defendant's employees were motivated by invidiously discriminatory animus. Although H.T. racially identifies as black, (Am. Compl. ¶ 18), the Amended Complaint contains no allegation that any individual involved in the HIB process harbored racial animus against H.T. or that any of the actions Defendant's employees took in connection with the HIB investigation were otherwise racially motivated. Nor can Plaintiff rely on a "class of one" theory as permitted in other circumstances by *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) (per curiam). Under such a theory, a plaintiff may state a claim under § 1985 "by alleging that [] a defendant intentionally and with no rational basis treated him differently from others similarly situated." *Novellino v. N. J. Dep't of Corr. Mountainview Youth Corr. Facility*, No. 10-4542, 2011 WL 3418201, at *5 (D.N.J. Aug. 3, 2011) (citing *Hill*, 455 F.3d at 239). Here however, Plaintiff has made no allegation that H.T. was treated differently than similarly situated students. Indeed, Plaintiff maintains that when Defendant allegedly sanctioned H.T. for HIB without making all required factual findings, it followed an established "policy, practice and/or custom" dating back to at least September 2012. (Am. Compl. ¶¶ 74-78). Thus, Plaintiff in fact alleges that the HIB investigation of H.T. was handled consistently with investigations of similarly situated students.

Finally, for the reasons detailed above, Plaintiff has failed to allege that he was deprived of any right or privilege as a result of the HIB investigation. Plaintiff's § 1985 claim must therefore also be dismissed on this basis. Thus, the Court will dismiss Plaintiff's § 1985 claim.

### E. Remaining State Law Claims

In addition to the federal claims analyzed above, each Count of the Amended Complaint also alleges corresponding claims under various state laws. For the reasons detailed above, the Court will dismiss all of Plaintiff's federal claims. The Court declines to extend supplemental jurisdiction over Plaintiff's remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3). Accordingly, the Court will dismiss the Amended Complaint in its entirety.

## V. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) will be granted and the complaint dismissed without prejudice. In particular, the Court notes that it will dismiss this case without prejudice as to Plaintiff's ability to seek further relief before the state courts. An appropriate Order accompanies this Opinion.

                                                            **CLAIRE C. CECCHI, U.S.D.J.**

Date: March 28, 2019